## Case No. 11,184.

In re PITMAN.

[1 Curt. 186.]¹

Circuit Court, D. Rhode Island.    June Term, 1852.

CONTEMPT—APPLICATION FOR ORDER TO OFFICER OF COURT TO PAY OVER MONEY—EVIDENCE—SWORN ANSWERS—ACT OF MARCH 2, 1831.

1. An application to the court to compel one of its officers to pay over money due from him in his official capacity, is a proceeding as for a contempt, and the court has jurisdiction under the act of congress of March 2, 1831 [4 Stat. 487].
[Cited in Re May, 1 Fed. 743; U. S. v. Anon., 21 Fed. 768, 770; Re Manning, 44 Fed. 276.]
[Cited in Cartwright's Case, 114 Mass. 239.]

2. In such a proceeding the sworn answers of the officer are evidence in his favor.
[Cited in State v. Matthews, 37 N. H. 456.]

Burrington Anthony, lately marshal of the United States for the district of Rhode Island, filed his petition, stating that, as marshal, he received from the treasury of the United States, and paid to [John T. Pitman] the clerk of this court, large sums of money, from time to time claimed by him for fees due to him from the United States; that subsequently, on a settlement of his accounts with the treasury, various items of the clerk's accounts, which had been thus paid, were disallowed, and the petitioner has thus overpaid to the clerk, the sum of twenty-five hundred dollars. He prays for an order to show cause, and the appointment of a master to audit the account, and for an order on the clerk to repay what may be found due. The answer of the clerk admits that he rendered to the petitioner charges against the United States, which, on being audited at the treasury department, were disallowed, amounting to the sum of $2,293.46. But he denies that he had received from the marshal any money on account of those charges. He states that he received from the marshal certain memorandum checks, amounting to the sum of $4,424.92, on account of the bills of cost, which embraced the rejected items; that

---

¹ [Reported by B. R. Curtis, Esq.]

from time to time the marshal paid various sums on account of these checks, amounting in all to $2,100, and leaving due thereon the sum of $2,324.92, which exceeds the amount of the items disallowed. He annexes copies of these checks, and states that the originals have been lost since the filing of the marshal's petition. An order of reference to a master to audit the accounts was made by the late Mr. Justice Woodbury, and the master having reported, the matter came on to be heard upon exceptions to the report. The other material facts will appear in the opinion of the court.

Mr. Jenckes, for petitioner.
Joseph S. Pitman, for respondent.

CURTIS, Circuit Justice. The first exception is "because the master has assumed that the terms of his commission confer on him no authority, to go into the private personal affairs of the parties, but must be confined to accounts between them, arising from their official capacities as officers of the court." This exception must be overruled. Not only the terms of the order of reference, but the nature of the proceeding, required the master to limit his action to accounts growing out of the official relations and conduct of the parties, as will be more fully stated in disposing of another exception.

The second exception is: "Because the master determined, there was not sufficient evidence of the existence and making of the checks in question, upon which to found a right to introduce secondary evidence of their loss and their contents." Some evidence of the existence and loss of these checks was necessary to be given to obtain a right to offer secondary evidence of their contents. But, with the exception of the one for forty-three dollars, the instruments are not negotiable, being payable on a contingency which affects both the time and the amount. Bayley, Bills & N. 1. They are writings of such a character as to be likely to remain in the personal custody of the clerk, and the loss of which, therefore, would not probably be within the knowledge of any third person. His affidavit, therefore, of their loss would be sufficient, uncontrolled, to prove their loss, if it were a trial at law; and though, on such a trial, some evidence must be given to the court of the existence of the instrument, before secondary evidence is offered to the jury of its contents, yet on a hearing by a master, this is wholly unnecessary, because all the evidence is offered to him, and if the secondary evidence proves the contents, it necessarily proves the existence of the instrument. In this case the master did receive and consider the secondary evidence, and has reported that there was not sufficient evidence of the existence of loss of checks, to found a right to introduce secondary evidence of their contents. If I considered the evidence clearly insufficient to prove the contents of the

checks, I might not deem it necessary to order the report to be recommitted, on account of an erroneous ruling respecting the admissibility of this evidence; but, considering the nature of this proceeding, and the evidence which was before the master, I am of opinion, that he has fallen into an error which affects the substantial rights of the respondent.

The master did not treat the answer of the clerk as evidence. This was erroneous, as will plainly appear when we consider what this proceeding is. It is an application to the court to exercise its summary jurisdiction over its own officers, to restrain one of them from doing a wrong in his official capacity. Such a wrong is considered to be a contempt of court, and the court has power to proceed against and punish for it. This jurisdiction is expressly saved to the courts of the United States by the act of congress of March 2, 1831 (4 Stat. 487), which provides, that the power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court, shall not be construed to extend to any cases, except (among others) the misbehavior of any of the officers of the said courts in their official transactions. It is in the nature of a criminal proceeding, and though often resorted to for the protection and enforcement of private rights, such as the payment of money improperly withheld from suitors by officers of the court, and the like, and though its modes of proceeding may be somewhat varied when the object is to afford a summary remedy for the violation of a private right; yet the character of the proceeding should not be lost sight of, and especially it should not be so varied as to deprive the party proceeded against of any substantial right.

Now one of the most important privileges accorded by the law to one proceeded against as for a contempt, is the right to purge himself, if he can, by his own oath. So rigid is the common law as to this, that it does not allow the sworn answers of the respondent to be controverted, as to matter of fact, by any other evidence. U. S. v. Dodge [Case No. 14,975]. "If the party can clear himself upon oath he is discharged." 4 Bl. Comm. 286, 287. Whether this rigid rule would be applied to that class of these cases which Blackstone (4 Comm. 285) says "is to be looked on rather as a civil execution for the benefit of the injured party," it is not necessary here to decide. There are certainly precedents for the introduction of other kinds of proof. Kilpatrick v. Vandiver, 2 Rep. Const. Ct. 341; Summers v. Caldwell, 2 Nott & McC. 341; Taylor v. Howren, 1 McCord, 418; Daniel v. Capers, 4 McCord, 237; U. S. v. Mann [Case No. 15,716]; Justices of Baldwin Co. v. Bivins, 6 Ga. 575.

The order of reference in this case must have been made by my learned predecessor upon the footing that evidence dehors the

answer was admissible, and I feel no disposition to disturb this order, even if there was any application by either party to do so, which there is not. But I cannot doubt that at every stage of these proceedings the clerk has a right to rely on his sworn answers, so far as they are responsive to the charges made by the late marshal, in his application to the court. Now what relates to these writings, called "memorandum checks," is directly responsive. The late marshal alleges that he paid the clerk moneys, on account of claims for fees which were afterwards disallowed at the treasury. The clerk denies that he paid him moneys; he says he gave him only his written promises to pay, which, so far as respects these disallowed claims, he has not paid.

It is argued that the clerk, having receipted his own bills, as if the marshal had paid them in money, for the very purpose of enabling the latter to obtain payment from the government, is estopped to deny that he did receive the money; and so he is, as between himself and the United States; but this does not render the clerk liable to be proceeded against as for a contempt, in not repaying to the late marshal, what he never received from him.

It is also argued that as the clerk chose to take the marshal's private promises in payment, he thereby closed the official transactions, and that these memorandums are private claims by Mr. Pitman on Mr. Anthony, and cannot be brought into the account by way of offset. But this view is more ingenious than sound. Mere promises, with one exception, are not negotiable. When the whole transaction is understood, they amount, in effect, only to acknowledgments by the marshal, that he had not paid the sums receipted for, but still remained accountable to the clerk, for so much as he should obtain from the treasury upon his bills, to the extent mentioned in these memorandums. They are not to be allowed in offset, but as evidence that the obligation of the late marshal that he had paid, in money, the clerk's bills, is not true. For this purpose, if produced, they would be competent and admissible, and their loss being shown by the oath of the clerk, secondary evidence of their existence and contents is to be received. This evidence, so far as it was exhibited to the master, consists first, in the answer of the clerk, together with his book of original entries; and second, in the testimony of Mr. Jackson, the present marshal. I do not propose to examine this evidence, because I think it proper, that the account should be recommitted. It is said that all the evidence was not laid before the master. This is the fault of the party, and affords no ground of action by the court; but inasmuch as the master committed an error in not treating the answer of the respondent as evidence, and in ruling that, upon the case made, secondary evidence was not admissible, I shall send the matter to him again, to be proceeded with in conformity with this opinion.

In drawing up the order to recommit, I think a clause should be inserted, empowering the master to examine the clerk upon interrogatories, upon the application of the petitioner. Regularly this should have been done, in the first instance, under the direction of the court; but it took a different course, I suppose, by consent, and went to the master, as already stated. I am unwilling to interfere with the order which was entered; and therefore, unless some objection is made, let such a clause be inserted in the order of recommitment. If either party does object, and the petitioner desires to examine the clerk on interrogatories, let them be prepared and exhibited to the clerk, and if not objected to, answered here, and if objected to, the court will settle them. The interposition of a master, in a case like this, though convenient, and when consented to, proper, is not strictly regular, and must not be drawn into a precedent.

Something was said at the argument respecting the danger to which the petitioner might be exposed, in case these promises came into the hands of a third person for value. Not being negotiable, with one exception, there can be no such danger, and in respect to the small note, which is negotiable, a bond, with surety, can be filed hereafter to protect the petitioner, in conformity with a practice now well settled even in courts of low.

This disposes of all the important exceptions. Those which allege some small errors of computation can be examined by the master when he reconsiders his report.