In re PURVINE.

(Circuit Court of Appeals, Fifth Circuit. June 28, 1899.)

No. 850.

1. BANKRUPTCY—APPEAL AND REVIEW.
    On a petition to the circuit court of appeals to review and revise an order of the district court in bankruptcy, under Bankruptcy Act 1898, §§ 24, 24b, only questions of law will be considered.

2. SAME—JURISDICTION—REQUIRING BANKRUPT TO SURRENDER PROPERTY.
    A court of bankruptcy has jurisdiction and power to order a bankrupt to pay over to his trustee money found to be in his possession and control, and properly belonging to his estate in bankruptcy; and, if the bankrupt fails to obey such order, the court may commit him, as for a contempt of court, until he complies.
    Shelby, Circuit Judge, dissenting.

Petition for Review of an Order of the District Court of the United States for the Northern District of Texas, in Bankruptcy.

The creditors of A. S. Purvine, on November 23, 1898, filed a petition against him in the United States district court for the Northern district of Texas, praying that he be declared a bankrupt. It was alleged that he was insolvent, and that he had sold his property, and was concealing the proceeds to defraud his creditors. The schedule filed by Purvine showed an indebtedness of $4,600, and no assets but a homestead. Purvine was duly adjudged a bankrupt, and O. B. Colquitt was appointed trustee. On the 16th of January, 1899, upon the

application of the petitioning creditors, Purvine was examined. On the 25th of January, 1899, the said creditors filed a petition addressed to the referee, alleging that it appeared from the bankrupt's examination that he had in his possession $8,300, and that Purvine denied that he had possession of this fund, and refused to deliver the same to the trustee. The petition charged that his schedule of assets was false in failing to include this fund, and that he was concealing the same. The prayer was for an order to require Purvine to pay this money to the trustee. Purvine filed an answer, under oath, denying that he had such funds, or any other property except that stated in his schedule. The referee, however, made an order requiring Purvine to pay to Colquitt, the trustee, $7,400 by April 1, 1899. On the 11th of April, 1899, Purvine having failed to pay the money, the creditors prayed for a certificate of contempt from the referee to the district judge. On the 8th of May, 1899, on the motion of the creditors, an order was made by the district court requiring Purvine to show cause why he should not be punished for contempt for failing to pay the money to the trustee. On May 15, 1899, Purvine answered that on the 27th day of February, 1899, he had filed his sworn answer that he did not have the money, and could not pay it over, as ordered by the referee. He also said that he had at all times obeyed the orders of the court except to turn over the money which he did not have to turn over; that he had fully answered all questions propounded to him touching the money alleged to be in his possession, and had shown that the money had been stolen from him, or lost, while he was in a state of intoxication. On May 19, 1899, the district court entered an order approving the order of the referee, and requiring Purvine to turn over to the trustee the $7,400 by 12 m. on the next day, the 20th of May, and in the interim to be under the surveillance of the United States marshal, and requiring the cost of the attendance of the marshal to be paid by Purvine; and the order further gave Purvine and his counsel until 10 o'clock on May 20, 1899, to file his motion to vacate the order. On May 20, 1899, a motion to vacate the order was filed, based upon the ground that the order was unlawful, for reasons therein stated. On the 20th of May, 1899, the court overruled the motion to vacate or modify its order, and entered the following order: That, "it appearing to the court that the order of the referee requiring the payment of $7,400 to O. B. Colquitt, trustee, was lawfully made, and that said bankrupt is now in possession and control of the sum of $7,400, and the same lawfully belongs in the custody of the said trustee, and is applicable to the payment of the debts of the said bankrupt duly proved against him, and it appearing that he has disobeyed the order of the referee, and is in contempt of the order of said referee, it is therefore ordered and adjudged that the order of the referee is a lawful order; and, it further appearing that the time for paying the sum of $7,400 to the trustee has expired, and Purvine has failed, and still fails, to comply, it is further ordered and adjudged that Purvine is guilty of contempt of the authority of the district court of the United States, and he is committed to the custody of the United States marshal, to be by him held and confined in the jail of Dallas county until the said A. S. Purvine shall pay to O. B. Colquitt, trustee, as aforesaid, the sum of $7,400." Upon the issuance of this order the United States marshal incarcerated the bankrupt, Purvine, and still holds him in the county jail of Dallas county by virtue of this order. This order of commitment is brought to this court by Purvine for revision.

W. S. Simkins, for bankrupt.

R. W. Flournoy and T. A. Altman, for creditors.

Before PARDEE and SHELBY, Circuit Judges, and NEWMAN, District Judge.

NEWMAN, District Judge (after stating the facts as above). The question in the case before us is, had the district court power to pass the order excepted to, and brought before the court of appeals in vacation, in chambers, for revision?

This court only revises the action of the district court in matters of law. Bankruptcy Act 1898, §§ 24, 24b.

96 F.—13

The facts are for the district court. The judge presiding in that court found that Purvine had the money in his possession and control, and there was ample evidence to support such finding; so the sole question here is one of the power of the district court to order a bankrupt having money in his possession, belonging to the bankrupt estate, to turn the same over to the trustee, and to punish as for contempt the failure to do so.

We are satisfied that the district court has such power. It is the duty of the bankrupt to deliver to the trustee all property subject to his debts. Upon his failure to make such delivery he may be ordered by the court to do so. Unquestionably, the court has this power. Having it, it is strange, indeed, if, when exercising it, it cannot enforce its orders. To deny this authority is to admit that a bankrupt may sit in the very presence of the court with cash to any amount in his pocket, which is a part of his estate, and the title and right to the possession of which is legally in the trustee, and smile at the order of the court directing him to turn it over to the trustee. To deny this authority makes this anomaly: that it is the duty of the court to make an order which it is powerless to enforce. By section 41, Bankruptcy Act 1898, it is provided:

"A person shall not in proceedings before a referee, (1) disobey or resist any lawful order, process, or writ. * * * b. The referee shall certify the facts to the judge, if any person shall do any of the things forbidden in this section. The judge shall thereupon, in a summary manner, hear the evidence as to the acts complained of, and if it is such to warrant him in so doing, punish such persons in the same manner and to the same extent as for contempt committed before a court of bankruptcy, or commit such person upon the same condition as if the doing of the forbidden act had occurred with reference to the process of, or in the presence of the court."

If the court of bankruptcy is powerless in this respect, persons, by becoming bankrupts, obtain an immunity not allowable in any other court of equal dignity, either federal or state, in this country. Orders similar to that made by the district judge in this case were made under the bankrupt act of 1867, and enforced in the same way. In re Dresser, 3 N. B. R. 557, Fed. Cas. No. 4,077; In re Salkey, 11 N. B. R. 423, Fed. Cas. No. 12,253; In re Peltasohn, Fed. Cas. No. 10,912; In re Kempner, Id. 7,689, 6 N. B. R. 521; In re Speyer, Fed. Cas. No. 13,239, 6 N. B. R. 255.

While we are clear, therefore, as to the existence of the authority to punish for contempt in cases like this, we think it proper to say that in the bankrupt court, as in all other courts, the power to punish for contempt should be carefully exercised. By the bankrupt law, various acts of the bankrupt are made criminal offenses, and various rights vesting in the trustee are to be enforced by proper civil proceedings in courts of competent jurisdiction. We simply pass on the question before us, and hold that, when a bankrupt has in his possession and control cash belonging to the bankrupt estate, the court may, within the meaning of the bankrupt act, make a "lawful order" directing him to turn the same over to the trustee, and on his failure to do so may commit him until he complies with the order.

We decline to interfere with the order of the district court, and consequently it is ordered that the application for a revision of the

action of the district judge in this case be, and the same is hereby, denied.

SHELBY, Circuit Judge (dissenting). By the constitution of the state of Texas (article 1, § 18) it is declared "that no person shall ever be imprisoned for debt." When the laws of the state prohibit imprisonment for debt, such laws are by statute made effective against all processes and orders of the courts of the United States. Rev. St. U. S. § 990. Construing the statute just cited, Wallace, J., in Manufacturing Co. v. Fox, 20 Fed. 409, said:

"The power of the courts of the United States to punish for contempt and imprison for nonpayment of money judgments is circumscribed and controlled by the laws of the state, and where an order made in the progress of the cause is of the character of a judgment or decree for the payment of money it cannot be enforced upon the theory that disobedience is a contempt."

See, also, Low v. Durfee, 5 Fed. 256.

It is well settled that constitutional provisions against imprisonment for debt do not apply in cases of judgments for torts, or against fines for criminal offenses, nor would such provision prevent imprisonment for failure to pay a fine imposed by the court in contempt proceedings. But this case does not present a judgment ex delicto, nor a fine. It is a proceeding by the creditors to obtain the satisfaction of claims against their debtor. An order is obtained that a sum of money be paid which is to be used in satisfaction of the debts, and imprisonment is imposed because the petitioner disobeys the order to pay the money. The Alabama constitution prohibits imprisonment for debt. The legislature passed a law authorizing a plaintiff who had failed to collect his judgment by execution to file a bill in equity against the defendant, requiring the defendant to answer under oath what property he has, the nature thereof, and in whose hands it is. The court was authorized to render a decree requiring the defendant to deliver the property or effects found in his hands to the register of the court. The statute also provided for the failure to comply with such decree,—the defendant would be guilty of contempt, and that he might be imprisoned in the county jail until he should have obeyed the decree. The supreme court of Alabama held this law unconstitutional. The court said:

"Its manifest purpose is to coerce the payment of the ordinary judgment debt by imprisonment in the county jail under the guise of making a refusal to pay a contempt of court. * * * The purpose of the law is to force the payment of the debt which is the basis of the suit. The defendant is attached and imprisoned because he does not deliver the money or property in order to pay the debt. If the debt is paid, the prisoner is released. If he does not deliver the property or money to the officer of the court for the ultimate satisfaction of the complainant's debt, his imprisonment is continued. The indirection employed cannot aid the matter, for the express prohibition of an act is also an implied prohibition of all and every means designed and used solely to reach that end. What cannot be done directly is also prohibited to be done indirectly. The payment or delivery to the register is only for the benefit of the complainant. Characterizing the refusal to pay or deliver as a contempt does not make it such if it appears in its essence and nature to be otherwise, and is merely a new legislative creation to accomplish by evasion an unlawful or unconstitutional end. * * * An order committing a defendant for contempt for such refusal is an imprisonment for debt, and as such is prohibited by

said section of the Declaration of Rights." Ex parte Hardy, 68 Ala. 303; Cotton v. Sharpstein, 14 Wis. 236; In re Blair, 4 Wis. 531; Wightman v. Wightman, 45 Ill. 167; Coughlin v. Ehlert, 39 Mo. 285; Roberts v. Stoner, 18 Mo. 481; In re Atlantic Mut. Life Ins. Co., Fed. Cas. No. 629.

There is nothing in the bankruptcy act to authorize imprisonment for debt. In its essence this proceeding is an imprisonment for debt, which violates the constitution of Texas and the United States statute. Const. Tex. art. 1; Rev. St. U. S. § 990; The Blanche Page, 16 Blatchf. 1, Fed. Cas. No. 1,524; Hendryx v. Fitzpatrick, 19 Fed. 810.

Section 41 of the bankruptcy act forbids one to "disobey or resist any lawful order, process, or writ" in proceedings before a referee. This, of course, implies that the party has the ability to obey the order, and that he willfully disobeys it. This language merely recites a power in reference to decrees or orders that all courts possess. It confers no new or peculiar power. Rev. St. U. S. § 725. The bankruptcy act in terms provides for the punishment of a person who "concealed while a bankrupt * * * from his trustee any of the property belonging to his estate in bankruptcy." It also provides for the punishment of one who has "made a false oath or account in, or in relation to, any proceeding in bankruptcy." On conviction, the person violating either of these provisions is to be imprisoned for a period not exceeding two years. The prosecutions for these offenses are to be conducted as other criminal cases. Bankr. Act, § 29.

In proceedings to punish for contempt it is a general rule not to permit the respondent's answer to be traversed. It is taken as true, and, if false, a prosecution may be had for perjury. Blackstone so states the rule. 4 Bl. Comm. 287. This rule is followed by the federal courts. In re May, 1 Fed. 737; U. S. v. Dodge, 2 Gall. 313, Fed. Cas. No. 14,975. In Re Pitman, 1 Curt. 186, Fed. Cas. No. 11,184, it was held by Judge Curtis that, although there were precedents for the introduction of other evidence, the respondent's answer was to be treated as evidence. The court said: "Now, one of the most important privileges accorded by law to one proceeded against for contempt is the right to purge himself, if he can, by his own oath. So rigid is the common law as to this that it does not allow the sworn answers of the respondent to be controverted as to matter of fact by other evidence." This general rule of the common law has exceptions, not material to be discussed here. The rule is here cited to show that the respondent's answer is a material, and often a controlling, part of the record in the proceedings for contempt of court.

In the administration of the bankruptcy law the question most often occurring is, has the bankrupt surrendered all of his assets? By the evidence of creditors, and even from his own books, it may often appear to the satisfaction of the referee that he has not. In every such case an order might be made requiring him to deliver to the trustee the amount which the referee determines he has retained. His failure to obey such order might as well, in such cases as this, be punished as a contempt of court. The administration of the law with that construction would render useless those provisions of

the statute providing for criminal prosecutions. The statute, viewed as a whole, does not, in my opinion, authorize such construction.

If the record does not show that it is or was possible for the petitioner to perform the decree, the court has no authority to punish for the failure to perform it. Rap. Contempt, § 17; Adams v. Haskell, 6 Cal. 316; Kane v. Haywood, 66 N. C. 1; Walton v. Walton, 54 N. J. Eq. 607, 35 Atl. 289. It does not appear from the record in this case that the petitioner can pay to the trustee the sum involved. If his answer be disregarded, contrary to the common-law rule, and the order of commitment only be looked to, it is not shown that he could certainly make the payment. The order of commitment recites that he has the money "in possession and control." This language may be construed as all decrees are construed,—in the light of the pleadings and record. It was not claimed, nor intended to be claimed, that he has the funds in his pocket in jail. Prisoners are not permitted to keep such sums about them while in jail. All the order shows is that the money, at its date, was under the control of the petitioner. It is not shown where it is, nor how it is under his control. If the place of its deposit was known, it would be reached by the civil process of the court. The order of commitment, construed in the light of the record, does not show that the prisoner can make the payment.

When examined, the bankrupt must answer, otherwise he can properly be punished for contempt in refusing to answer legal questions. When he answers, as in this case, that he has not the money called for, and therefore cannot comply with the order of the court, if his answer is true, he has done all he can do, and is not in contempt of court. If his answer is willfully false, he is guilty of perjury, under section 29 of the bankruptcy act. The criminal law would then afford the regular and legal mode for his punishment. If the court can, in a proper case, legally hold that such answer is also a contempt of court, it would not authorize a sentence of perpetual imprisonment, or a sentence of imprisonment till the bankrupt confessed the perjury of his answer by producing the money he had sworn was lost. The general rule that a court can punish a party for failure to perform its decrees is unquestioned. It is equally well settled that it must be a decree that he can perform. Incapacity to do the act required by the decree is necessarily an answer to a proceeding for contempt for nonperformance. A commitment for contempt for failure to perform an act not possible of performance is unjust and illegal. If it be true that a court may condemn a party to perpetual confinement until he performs a decree, such commitment, in the very nature of things, is unjust and illegal, unless it indisputably appears that he can, if he choose, perform the act commanded. While the dignity and power of the court must and should be protected and preserved, the fundamental constitutional rights of the citizen are of paramount importance, and are equally under the protection of the courts. The order of commitment in this case seems to me illegal, because in conflict with constitutional principles. This view, I think, is sustained by the supreme court in the case of Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841. That was a case begun in chancery in the District of Columbia. The defendant was held to be guilty of contempt in

neglecting to pay into court certain money held by him which was the subject of the controversy in the suit. He also declined to appear when summoned so to do. The court thereupon ordered his answer stricken from the files, and a decree to be entered that the bill be taken pro confesso against him. Mr. Justice White, who delivered the opinion of the court, gives the judicial history of the law concerning contempt of court in England and in this country, and holds that one could not be deprived of property without due course of law in the guise of punishing him for contempt. In the course of the opinion the court said:

"The necessary effect of the judgment of the supreme court of the District of Columbia was to decree that a portion of the award made in favor of the defendant; in other words, his property belonged to the complainants in the cause. The decree therefore awarded the property of the defendant to the complainants upon the hypothesis of fact that by contract the defendant had transferred the right in or to this property to the complainant. If the court had power to do this by denying the right to be heard to the defendant, what plainer illustration could there be of taking property of one, and giving it to another, without hearing, or without process of law? If the power to violate the fundamental constitutional safeguards securing property exists, and if they may be with impunity set aside by courts on the theory that they do not apply to proceedings in contempt, why will they not also apply to proceedings against the liberty of the subject? Why should not a court in a criminal proceeding deny to the accused all right to be heard, on the theory that he is in contempt, and sentence him to the full penalty of the law? No distinction between the two cases can be pointed out. The one would be as flagrant a violation of the rights of the citizen as the other; the one as pointedly as the other would convert the judicial department of the government into an engine of oppression, and would make it destroy great constitutional safeguards."

Stripped of all technical forms, what is the substance of this proceeding so far as it is civil procedure and so far as it relates to property? It is a proceeding by creditors to collect their claims. On a motion made by them their debtor is placed in jail, to be kept there until he produces a sum sufficient to pay their claims. If his friends, out of sympathy for his condition, were to pay the amount of money demanded,—as was often done when imprisonment for debt was the rule,—his release would follow, for there is no fine, and no sentence for a definite period by way of punishment. The constitution of Texas protects the debtor against such judgment, even in the most formal suit, and the procedure cannot be legalized upon the theory that constitutional provisions may be disregarded in proceedings for contempt. What is the case, viewed as a criminal case,—as an offence against law? The petitioner has not offended the dignity of the court in its presence. He has not refused to obey any decree of the court, admitting or averring his ability to obey it. He has answered under oath, showing an inability to obey the order. If that answer is false, he subjects himself to a criminal prosecution for perjury. The district court concludes that it is false. While it is true that for making a false answer under oath punishment should be inflicted, it must be inflicted, if at all, according to law. If Purvine's answer is true, he has not the money to pay the $7,400 ordered to be paid. If he has it, he has committed perjury. Practically, looking at the substance of the proceeding, the district court, in effect, convicts Purvine of perjury,—of making a false answer,—and, dis-

pensing with the formalities of grand and petty juries, a sentence is pronounced against him severer in its terms than if he had been convicted of perjury after indictment and trial. When indicted he would have bail, a trial in due form of law; if convicted, the right of appeal, and to apply for pardon; but by convicting him under the form of a contempt proceeding he is deprived of all these constitutional safeguards. The petitioner, it is true, has been in jail under this order for only a few months. It is in form fixing no period for his release. If valid to hold him now, it will be valid to hold him 10 years from now.

I think that the record shows that the order of commitment is erroneous, and is in excess of the jurisdiction of the district court, and that an order should be made directing the discharge of the petitioner from imprisonment.