RIPON KNITTING WORKS et al. v. SCHREIBER.

(District Court, D. Washington, E. D. May 23, 1900.)

1. BANKRUPTCY—REQUIRING BANKRUPT TO SURRENDER PROPERTY.

A court of bankruptcy has power and jurisdiction to order a bankrupt to surrender to his trustee money or other property found to be in his possession or control and which constitutes assets of his estate in bankruptcy.

2. SAME—PUNISHMENT FOR CONTEMPT—TRIAL BY JURY.

Where a bankrupt fails to obey an order of the court of bankruptcy requiring him to surrender to his trustee money or other property found to be in his possession and to belong to his estate in bankruptcy, such court has power and jurisdiction, on the petition of the trustee, to punish the bankrupt as for contempt, by committing him to jail until he shall obey the order in question, or until further orders of the court; and on the hearing of such petition the bankrupt is not entitled to a trial by jury.

3. SAME—EVIDENCE.

Where a bankrupt is shown to have had in his possession at the time of the adjudication assets greatly in excess of the amount actually surrendered to the trustee, and he does not satisfactorily or credibly account for the deficit, and it is impossible for the trustee or creditors to identify or trace the proceeds of the various sales made in the bankrupt's retail business, he cannot complain of an order of the court requiring him to pay over to the trustee the money found to be in his hands, on the ground that, for want of specifications as to the particular money or property in question, he was unable to produce evidence to exculpate himself from the charge of withholding or concealing it.

4. SAME—CRIMINAL LIABILITY.

The fact that a bankrupt who knowingly and fraudulently conceals from his trustee any property belonging to his estate in bankruptcy thereby commits a crime, for which he is liable to be prosecuted, and punished by imprisonment, does not deprive the court of bankruptcy of jurisdiction to order the bankrupt to surrender such property to his trustee, and, on disobedience to such order, to deal with him summarily for contempt.

5. SAME—BURDEN OF PROOF.

Where proceedings are taken to compel a bankrupt to pay over to his trustee money alleged to be in his hands, and to belong to his estate in bankruptcy, and the bankrupt, in answer, denies that he has any money in his possession, it must be proved beyond a reasonable doubt that he actually has the present possession or control of the money, or that any transfer or other disposition which he alleges he has made of it is a mere subterfuge, such as would not prevent him from producing it.

6 SAME—IMPRISONMENT FOR DEBT.

A court of bankruptcy has power to compel a bankrupt to surrender to his trustee money or other property which is in his possession or control, and which belongs to his estate in bankruptcy, by committing him to jail until he complies with its order in that behalf, notwithstanding the provision of Rev. St. U. S. § 990, that "no person shall be imprisoned for debt

in any state, on process issuing from a court of the United States, where, by the laws of such state, imprisonment for debt has been or shall be abolished." If said section applies to proceedings in bankruptcy, it is in conflict with the bankruptcy act of 1898, and must give way to the later statute.

## In Bankruptcy.

This is a case of involuntary bankruptcy. For a period of over two years prior to November 8, 1899, the bankrupt carried on business in the city of Spokane as a retail dealer in boots and shoes, and until February, 1899, he appears to have conducted his business honestly and successfully, so that he was able at that time to issue a statement of the condition of his business as a basis for credit, which gave him good standing as a merchant, and thereafter he was able to and did make liberal purchases of goods on credit. Between February and November he received in money from sales of goods, collection of accounts, and loans which he obtained, more than $31,000, and upon his examination before the referee he appears to be unable or unwilling to show what disposition had been made of a considerable part of the money so received. His books of account are not complete, and no accurate statement of his affairs can be made therefrom. After examination of the bankrupt and hearing the evidence of his clerks and others, the referee made a finding that the bankrupt has in his possession, and unlawfully withholds from the trustee of his estate, at least $6,000, and thereupon made an order requiring him to pay that amount to the trustee within a period of five days. Exceptions were taken to said findings and order, and the court, upon a review of the evidence, and further examination of all the books and memoranda relating to the business, reached the conclusion that the referee had not given full credit for all the money paid for merchandise and expenses of the business, and thereupon modified the order of the referee by fixing the amount of money adjudged to be in the possession of the bankrupt, and wrongfully withheld by him at $3,000, which amount the bankrupt was required to pay to the trustee forthwith. Service of the modified order was made, and compliance therewith on the part of the bankrupt was demanded, and upon his failure to pay the money an application was made on behalf of the trustee and creditors to compel obedience to the order by proceeding against the bankrupt for contempt of court. An order was made requiring him to show cause why he should not be punished for contempt, to which he has filed an answer denying the jurisdiction of the court to proceed against him in this manner, and also contradicting the decision of the court that he has possession or control of money, and averring that he is unable to comply with the order of the court for the reason that he is penniless, and obliged to depend for his subsistence upon the charity of his friends. The case has been argued and submitted upon the question whether all or any of the defenses set forth in the answer are valid, or constitute a bar to the exercise of the power of the court to imprison the respondent for contempt.

Samuel R. Stern, for trustee.
F. M. Dudley, for respondent.

HANFORD, District Judge (after stating the facts as above). 1. The bankrupt claims that before he can be proceeded against for contempt of court it is necessary to formulate specific charges upon which an issue may be joined, and he also claims that for the determination of every question affecting his accountability he is entitled to a jury trial. It is my opinion that the constitutional guaranty of the right to a jury trial in all common-law actions is not applicable to statutory proceedings in which the court exercises the powers of a special tribunal. As a court of bankruptcy, this court is a special tribunal, and when a case proceeds according to the usual practice in courts of bankruptcy a party against whom a de-

cision is rendered has no more right to complain of being deprived of his rights without due process of law than have parties against whom judgments are rendered in equity or admiralty cases. In re Purvine, 37 C. C. A. 446, 96 Fed. 192, is a case in which the circuit court of appeals for the Fifth circuit held that a court of bankruptcy has jurisdiction and power to order a bankrupt to pay over to his trustee money found to be in his possession and control, and properly belonging to his estate; and, if the bankrupt fails to obey such order, the court may commit him for contempt until he complies. It appears from the report of that case that the proceedings had in the district court were similar to the proceedings in this case, and in the opinion of the court reference is made to several cases under the bankruptcy law of 1867, which may be regarded as precedents for this procedure. Substantially the same practice appears to have been followed in a number of cases under the present bankruptcy law. In re Tudor (D. C.) 96 Fed. 942; In re Rosser, Id. 308; In re McCormick (D. C.) 97 Fed. 566; In re Schlesinger, Id. 930; In re Mayer (D. C.) 98 Fed. 839; In re Deuell (D. C.) 100 Fed. 633. In the absence of any statute prescribing a different procedure, in special proceedings the court must conform to some system, and the practice which has been generally pursued in other courts, and which has the sanction of experience, is the safest, and most likely to lead to results consistent with the principles of law and justice. This branch of the respondent's defense is squarely met and fully answered by the supreme court of the United States in the Debs Case, 158 U. S. 565–600, 15 Sup. Ct. 910, 39 L. Ed. 1106. In the opinion by Mr. Justice Brewer the law is declared with great force and clearness as follows:

"Nor is there in this any invasion of the constitutional right of trial by jury. We fully agree with counsel that 'it matters not what form the attempt to deny constitutional right may take; it is vain and ineffectual, and must be so declared by the courts'; and we reaffirm the declaration made for the court by Mr. Justice Bradley in Boyd v. U. S., 116 U. S. 616, 635, 6 Sup. Ct. 535, 29 L. Ed. 752, that 'it is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be "obsta principiis."' But the power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been from time immemorial the special function of the court. And this is no technical rule. In order that a court may compel obedience to its orders, it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency. In the Case of Yates, 4 Johns. 314, 369, Chancellor Kent, then chief justice of the supreme court of the state of New York, said: 'In the Case of the Earl of Shaftesbury, 2 State Tr. 615, 1 Mod. 144, who was imprisoned by the house of lords for "high contempts committed against it," and brought into the king's bench, the court held that they had no authority to judge of the contempt, and remanded the prisoner. The court in that case seem to have laid down a principle from which they never have departed, and which is essential to the due administration of justice. This principle that every court, at least of the superior kind, in which great confidence is placed, must be the sole judge, in the last resort, of contempts arising therein, is more explicitly defined and more emphatically enforced in the two subsequent cases of Reg. v. Paty, 2 Ld. Raym. 1105, and of Rex v. Crosby, 3 Wils. 188.' And again, on page 371, 'Mr. Justice Blackstone pursued the same train of observation, and declared

that all courts—by which he meant to include the two houses of parliament and the courts of Westminster Hall—could have no control in matters of contempt. That the sole adjudication of contempts, and the punishment thereof belonged exclusively, and without interfering, to each respective court.' In Watson v. Williams, 36 Miss. 331, 341, it was said: 'The power to fine and imprison for contempt from the earliest history of jurisprudence has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge. It is a power inherent in all courts of record, and co-existing with them by the wise provisions of the common law. A court without the power effectually to protect itself against the assaults of the lawless, or to enforce its orders, judgments, or decrees against the recusant parties before it, would be a disgrace to the legislation, and a stigma upon the age which invented it.' In Cartwright's Case, 114 Mass. 230, 238, we find this language: 'The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in courts of chancery and other superior courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of Magna Charta and of the twelfth article of our declaration of rights.' See, also, U. S. v. Hudson, 7 Cranch, 32, 3 L. Ed. 259; Anderson v. Dunn, 6 Wheat. 204, 5 L. Ed. 242; Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205; Mugler v. Kansas, 123 U. S. 623–672, 8 Sup. Ct. 273, 31 L. Ed. 205; Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. 77, 52 L. Ed. 405; Eilenbecker v. District Court, 134 U. S. 31, 36, 10 Sup. Ct. 426, 33 L. Ed. 803,—in which Mr. Justice Miller observed: 'If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it.' Commerce Commission v. Brimson, 154 U. S. 447, 488, 14 Sup. Ct. 1138, 38 L. Ed. 1061. In this last case it was said: 'Surely it cannot be supposed that the question of contempt of the authority of a court of the United States, committed by a disobedience of its orders, is triable of right by a jury.' In brief, a court enforcing obedience to its orders by proceedings for contempt is not executing the criminal laws of the land, but only securing to suitors the rights which it has adjudged them entitled to."

2. The bankrupt has also complained of unfair treatment in this: that he was not given an opportunity to introduce evidence to exculpate himself from the charge of concealing or withholding money which he should have paid to the trustee. As a matter of fact, there was no refusal to receive evidence offered in behalf of the bankrupt, nor to issue process for witnesses, and it is not pretended that he knows of any evidence which will have a tendency to place him in a more favorable situation. It is my understanding of the argument made by counsel for the bankrupt that the real point upon which the bankrupt relies is that he was unable to produce evidence because he was not informed as to what particular property or money was supposed to be abstracted or concealed; in other words, that no particular property or money was described in any pleading on file. This ground of defense is technical, but unavailing. The principles of reason and justice do not exact of those who have incurred losses by extending credit to a dishonest merchant the impossible thing of tracing the proceeds of merchandise which he has handled before compelling him to surrender money in his possession which rightfully should be applied to the payment of their accounts. In this case it is impossible for the trustee or the creditors to identify the pieces of money which have come to the bankrupt's hands, or to identify or describe the particular pairs of shoes which were sold for money which the bankrupt now conceals; and, being impossible, it is unnecessary.

3. To the merely formal objection that the bankruptcy law does not confer power upon the court to compel a bankrupt to surrender his estate to a trustee there are two sufficient answers. In the first place, the act does give the power specifically. The seventh section requires the bankrupt to "submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and where-abouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate." Subdivision 7 of section 2 expressly confers power upon the court to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto"; and subdivision 13 of the same section also expressly confers power upon the court to "enforce obedience by bankrupts, officers, and other persons to all lawful orders, by fine or imprisonment, or fine and imprisonment." The power thus conferred upon the court has been frequently exerted, as will be seen by reference to the list of cases under this law above cited. See, also, Loveland, Bankr. § 238. In the second place, the court, having acquired complete jurisdiction of the bankrupt and his estate, has inherent power to imprison him for contumacy, and compel obedience to its order. In the case of U. S. v. Hudson, 7 Cranch, 32, 34, 3 L. Ed. 260, the supreme court affirmed the doctrine relating to this subject in the following words:

"To fine for contempt, imprison for contumacy, enforce the observance of order, etc., are powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others."

This doctrine has been often reaffirmed and uniformly sustained, as in the Debs Case. See, also, 7 Am. & Eng. Enc. Law (2d Ed.) 68.

4. The decision in the Debs Case also disposes of another argument advanced but abandoned by counsel for the bankrupt, which is that the criminality of the bankrupt's conduct, and his amenability to a criminal prosecution, ousts the court of its jurisdiction to deal with him summarily for contempt. In the opinion in that case the court says:

"The law is full of instances in which the same act may give rise to a civil action and a criminal prosecution. * * * And it is no defense to the civil action that the same act by the defendant exposes him as well to indictment and punishment in a court of criminal jurisdiction."

5. One of the principal grounds of defense upon which the respondent relies is contained in his answer denying that he has any money. His answer is not conclusive, but the rule in such cases requires that the denial be overcome by evidence proving beyond a reasonable doubt that the bankrupt actually has the present possession or control of money, or that any alleged transfer or other disposition of it is a mere subterfuge which does not prevent him from producing it. U. S. v. Sweeney (C. C.) 95 Fed. 434; In re Purvine, 37 C. C. A. 446, 96 Fed. 192; In re Mayer (D. C.) 98 Fed. 839. The decision of the court that the bankrupt has at least $3,000 in his possession or under his control is based upon convincing evidence to the effect that a large amount of money actually came into his

possession within a few months before the adjudication. Of the money so received more than $2,000 remains entirely unaccounted for after giving full credit for all expenditures shown by the respondent's books of account, and after allowing in full the extravagant amount which he claims to have used for his personal expenses, and in dissolute practices, and losses in gambling. As to so much of the money, this is not a case of failure to give a satisfactory account, or to show in a satisfactory way how it has been disposed of, but it is a case of total failure to account in any way whatever, or to give any explanation. I am also convinced that the amount which the respondent claims to have lost in gambling is considerable in excess of the total amount of his actual losses. I am also convinced that, with a deliberately formed intention to defraud his creditors, the respondent proceeded methodically to make liberal purchases of merchandise on credit, and to dispose of his stock for cash as rapidly as possible. During the spring and summer months he conducted a slaughter sale, selling goods so much below the market value as to create a rush of business. In the month of August he pledged a large amount of new goods as security for $2,500, which he borrowed. In September, he purchased other goods on credit, and soon afterwards permitted the pledgee to sell the goods held as security for the $2,500 for a price much below the market value thereof, without making any attempt to redeem them. In view of the indisputable evidence which I have to consider, it would be ridiculous for the court to permit its decision holding that the respondent has money to the amount of at least $3,000 in his possession, or subject to his control, to be reversed by the mere denial of this bankrupt, who stultifies himself by alleging in his answer that he has squandered money which should have been paid to his creditors in gambling and indulgence in other vices.

6. The last defense to be considered is the right claimed by the respondent to exemption from imprisonment for debt. Section 990, Rev. St. U. S., provides that no person shall be imprisoned for debt in any state on process issuing from a court of the United States, where, by the laws of such state, imprisonment for debt has been or shall be abolished. The seventeenth section of article 1 of the constitution of this state provides that "there shall be no imprisonment for debt except in cases of absconding debtors," and from these provisions the respondent would draw the deduction that a bankrupt debtor, who has, in fraud of the rights of his creditors, purchased goods on credit, and disposed of the same for cash, and converted all of his assets into money, may with impunity retain the money, and defy the power of the courts to compel him to surrender it to the trustee of his estate, lawfully entitled to have possession of it. If it be true that the people, out of tender regard for poor debtors, have ordained an absolute and inflexible rule, by which the courts have been stripped of power to compel swindlers to give up the fruits of their fraudulent schemes, this defense must prevail in this case; but I find that similar constitutional provisions in other states have not been effective to prevent the courts from enforcing obedience to orders requiring bankrupts to give up money which they have at-

tempted to conceal. In re Purvine, and other cases above cited. In my opinion, it is a very close question whether imprisonment as a means of compelling a party over whom the court has jurisdiction to surrender the possession of money which he has no legal right to keep is imprisonment for debt within the meaning of the constitutional provision. The word "debt" is a technical term, and the disposition of the courts has been to give effect to the constitutional provision according to the strict and literal meaning of the words used, and, consistently with sound principles, such a rule of construction should govern in all cases. 8 Am. & Eng. Enc. Law (2d Ed.) 992; Loveland, Bankr. p. 546; Bogart v. Supply Co. (C. C.) 27 Fed. 722; Jeffries v. Laurie, Id. 198. The precise question here involved does not appear to have been decided by the supreme court of this state. The case of Burrichter v. Cline (Wash.) 28 Pac. 367, as reported, is a barren decision. No statement of the case is given, and the opinion merely affirms "that by article 1, § 17, of the constitution, imprisonment for debt, except in the case of absconding debtors, was abolished." In the case of Colby v. Backus, 19 Wash. 347, 53 Pac. 367, the court held that a statute providing for the taxation of costs against complaining witnesses in criminal cases, and imprisonment as a means of compelling payment thereof, is not repugnant to section 17 of article 1 of the constitution. In State v. Ditmar, 19 Wash. 324, 53 Pac. 350, the court decided squarely that the courts of this state have power to compel a defendant in a divorce case, who has the necessary means, to pay alimony, and to imprison for contumacy. In the Van Alstine Case (Wash.) 57 Pac. 348, the court, without discussing the question, assumed that a statute of the state enacted since the adoption of our constitution (2 Ballinger's Ann. Codes & St. §§ 5312–5329), which authorizes proceedings supplementary to execution, and the imprisonment of judgment debtors who have no property subject to execution, and who, upon examination, may be found to have possession of money which should be applied to satisfy judgments against them, is not repugnant to the constitution. Section 990, Rev. St. U. S., is a general statute relating to the subject of imprisonment for debt. It is controlling in all cases coming within its purview, and not affected by any act of congress of later date; but there is no rule of construction making this statute in any sense superior to a subsequent conflicting law. The bankruptcy law is a later statute, and contains the provisions above quoted, which confer special power upon the court to control the administration of estates of bankrupts, and to imprison bankrupts and other persons for contumacy. If section 990 is to be given a broad construction, so as to make it applicable to such cases as the one now under consideration, and forbids the imprisonment of bankrupts as a means of compelling the surrender of their estates, then there is a conflict; and, as the later is at least equally as specific in so far as it affects the question at issue, as the older law, the court has no right to refuse to exercise the power which it confers.

After giving careful attention to all the defenses presented in behalf of the respondent, it is my opinion that he is guilty of willfully disobeying a lawful order made by this court, and that he does

now, contrary to law, and in defiance of the authority of this court, conceal and withhold the sum of $3,000 which belongs to the trustee of his bankrupt estate, and it is the duty of the court to cause him to be imprisoned until he shall pay the sum of $3,000 to said trustee, or until the further order of the court in the premises. An order to this effect will be entered, and the respondent will be committed to the custody of the United States marshal, to be imprisoned in the county jail of Spokane county.