## Bristol *v.* Mills.

*Bankruptcy—Sale of personal property—Payment into court—Feigned issue—Title in trustee.*

Money is one form of property, and as such should be transferred to the trustee in bankruptcy where in a feigned issue the trustee would have been entitled to judgment had not the property been sold by the sheriff under order of court, as perishable property, and the proceeds paid into court. It would be "sticking in the bark" to say that because the bankrupt act of 1898 does not in specific terms give the trustee the right to money arising from the sale of personal property, title to which passed as of the adjudication in bankruptcy, that therefore the general creditors should be deprived of the benefit of the provisions of the act and that an execution creditor should profit by what is declared to be a fraud against the general creditors.

Argued May 23, 1900. Appeal, No. 234, April T., 1900, by G. C. Mills and Ida Joiner, in suit of Emory Bristol, against G. C. Mills, executor of C. Ball, deceased, Ida Joiner and William Cross, trustee in bankruptcy, from judgment of C. P. Erie County, Nov. T., 1898, No. 56, on verdict in favor of William

Cross, for the property at issue in the case of feigned issue. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by BEAVER, J.

Feigned issue. Before WALLING, P. J.

The facts sufficiently appear from the following charge of the court below:

Some cases present purely questions of fact, in which the responsibility rests with the jury; other cases present purely questions of law, in which the responsibility rests entirely with the court. If the court makes a mistake it can be corrected on a motion for a new trial, or in the Supreme Court.

In my opinion this is a case where the responsibility rests entirely with the court.

Proceedings were begun, according to the evidence, against T. Webster, in bankruptcy, on the 25th of last November, and they were so proceeded with that sometime in December last he was adjudged a bankrupt, under the statute which has been read, the act of congress of 1898, known as the bankrupt act. That statute makes void all judgments entered against the bankrupt, and all sales and conveyances of his property, within four months.

Now the undisputed evidence in this case shows that Mr. Webster had committed several acts of bankruptcy within the four months. He had assigned all his property to Mr. Bristol. Numerous judgments had been entered against him, which he had not stopped five days before the sale. That being so, it seems to me that these judgments entered against Mr. Webster about the last of August, 1898, and the executions thereon, were void, or voidable, as being acts of bankruptcy; and that therefore the trustee in bankruptcy, who is now a party to this proceeding, is entitled to the fund in court which was raised by the sale of the property alleged to be the property of Mr. Webster. That property was levied upon after his assignment and the sale to Mr. Bristol. An issue was directed to determine whether the property belonged to Mr. Bristol or to Mr. Webster or his execution creditors.

George C. Mills, executor of C. Ball, deceased, and Ida Joiner were made defendants in that issue, and Bristol, the

plaintiff.    Subsequently, Wm. Cross, who was appointed trustee, asked to be made a party to that issue, and this court made him a party.    He claimed the goods.

[After that issue was originally framed and the defendant, Mr. Cross, became a party to it, Mr. Bristol asked the court to sell the goods, and we ordered the sheriff to sell the goods and directed that that fund should take the place of the goods.] [2] In my opinion, the fact that the property was changed from goods to cash does not change the legal principle.    If the goods as they stood under the sheriff's sale were the property of Mr. Cross, the fact that the court ordered the goods sold would not change the legal principle; it does not make the money any more the property of other parties; it simply represents and takes the place of the goods, in my opinion, and not having been distributed to any of the parties it is, in my opinion, subject to the order of this court, and Mr. Cross, the trustee in bankruptcy, it seems to me, is entitled to that fund.

[We are asked to answer certain points on behalf of Mr. Cross.    I will answer the fourteenth point, which is as follows: " That under all the facts and the law in this case William Cross, trustee, is entitled to said $1,817, less the costs, charges and expenses of the sheriff for the sale thereof, and the verdict of the jury must be for William Cross, trustee."    *Answer:* That point is affirmed.] [4]

[There is nothing left but for the jury to render a verdict in favor of the defendant, William Cross, trustee, for the property at issue in this case.] [3]

Verdict in favor of William Cross, trustee in bankruptcy, one of the defendants.    G. C. Mills, executor of C. Ball, deceased, and Ida Joiner the other defendants, appealed.

*Errors assigned* were (1) in permitting William Cross, trustee in bankruptcy, to become a party defendant in the case. (2, 3) To portions of the judge's charge, reciting same.    (4) In answering the fourteenth point submitted by William Cross, trustee in bankruptcy, which is as follows: " Under all the facts and the law in this case, William Cross, trustee, is entitled to the said $1,817, less the costs, charges and expenses of the sheriff for the sale therefor, and the verdict of the jury must be for William Cross, trustee.    *Answer:* That point is affirmed."

*A. E. Sisson,* with him *D. A. Sawdey,* for appellants.—A bona fide creditor who, in endeavoring to collect his debt, had obtained a lien upon personal property by virtue of an execution prior to the commencement of the proceedings in bankruptcy, was safe in securing to apply thereon the proceeds of the sale of the property. The assignee in bankruptcy had no claim upon the property whatever, provided that by the laws of the state in which the property was situated, a levy or execution created a valid and enforceable lien : In re Schnepf, 1 B. R. 190 ; Webster v. Woolbridge, 3 Dill. 74 ; Marshall v. Knox, 83 U. S. 551 ; s. c. 8 B. R. 97 ; Clark v. Iselin, 88 U. S. 360 ; s. c, 11 B. R. 337 ; Catlin v. Hoffman, 9 B. R. 342 ; Wilson v. City Bank, 9 B. R. 97 ; s. c. 84 U. S. 473 ; In re Bernstein, 2 Ben. 44, s. c. 1 B. R. 199.

This question is still unsettled by the courts. Referees in bankruptcy and United States district courts have attempted to place a construction upon clause *f,* section 67, with conflicting results. In one or two instances a strained and unnatural construction has been placed upon the clause with a view of giving effect to some particular case instead of placing upon it such a construction as was plainly intended by Congress in enacting the clause—contemplating not only present conditions but future transactions between debtor and creditor, making certain their rights and remedies—thus securing the greatest good to the greatest number.

*George A. Allen,* with him *Louis Rosenzweig,* for appellee.

OPINION BY BEAVER, J., July 26, 1900 :

That an act of bankruptcy was committed by the sale by T. Webster to the plaintiff, in which a preference was given plaintiff by an allowance of overdue wages on the purchase money of the store, is not denied and is expressly ruled in Johnson v. Wald, 35 C. C. A. 522. It is also distinctly admitted that, if the contest in the feigned issue from the judgment, in which the appeal is taken, concerned the property which was sold, the defendant would be entitled to the judgment which he recovered.

The only question raised in the case is whether or not the money for which the goods sold, which was paid into court, is

to be regarded as equivalent in law to the property itself. Webster sold his stock of goods to Bristol, the plaintiff, execution creditors subsequently levied thereon, a feigned issue was awarded to try the title, plaintiff refused to give bond for the forthcoming of the goods and asked the court to direct them to be sold, and they were thereupon directed to be sold. Before the trial of the feigned issue, the creditors of Webster petitioned the court " to stay proceedings until appointment of trustee in bankruptcy " and the case was continued until the next term. On March 18, 1899, Cross, who had in the mean time been appointed trustee of the bankrupt's estate, petitioned the court for leave to take the money, the proceeds of the sale of the property by the sheriff, out of court and, on August 7, 1899, the court made this decree : " Upon due consideration of the within petition, the prayer of the said petitioner to be allowed to intervene in above case is granted and he, the said William Cross, trustee, is hereby made party defendant in said case, and the sheriff of Erie county is hereby directed to pay into court the amount realized from the sale of the personal property of said Townsend Webster, as within stated, to abide the event of the issue." This order was, so far as the money was concerned, practically identical with what the plaintiff himself asked previously as to the disposition of the goods, his motion being " for an order directing the sheriff of Erie county to sell said stock of merchandise and pay the proceeds thereof into court to await the determination of the issue in said cause, which motion was granted."

There can be no question as to the authority of the court to order the sale of perishable property or of such as cannot be conveniently kept by the sheriff. The plaintiff himself asked for the sale and that the fund arising therefrom should be paid into court to await the determination of the issue. Cross, the trustee in bankruptcy, was allowed to intervene as a defendant, it is true, after the sale was made but before the money arising therefrom was paid into court, the direction to the sheriff to pay the money into court being a part of the decree permitting Cross to intervene as defendant. The court had control of the money arising from the sale of the personal property of the bankrupt as fully to all intents and purposes as it could have had of the property, if it had not been sold. The plaintiff pe-

titioned for the sale, and the payment of the proceeds into court to await the determination of the issue was granted in the terms prayed for. It is "sticking in the bark" for him to say now that because the bankrupt act of 1898 does not in specific terms give the trustee the right to money arising from the sale of personal property, title to which passed as of the date of the adjudication in bankruptcy, that, therefore, the general creditors should be deprived of the benefits of the provisions of the bankrupt act and that the plaintiff himself should profit by what is declared by the act to be a fraud against the other creditors. In other words, although he cannot take advantage of his own fraud so long as the property remains in his hands or in the custody of the law, it is only necessary, by his own act and upon his own petition, to convert the property into money to enable him to do so. The proposition answers itself. The fund paid into court took the place of and stood for the personal property sold by the sheriff and the court below was not only justified in saying but was bound to say that the fund belonged to the trustee in bankruptcy of Webster's creditors. Money is one form of property and as such should be transferred to the trustee by a bankrupt : In re Purvine, 37 C. C. A. 446. This principle is applicable here. The judgment is affirmed.