MONTAGU et al. v. PACIFIC BANK et al.

(Circuit Court, N. D. California. June 24, 1897.)

No. 12,108.

BANKS AND BANKING—SPECIAL DEPOSITS—INSOLVENCY.

　　Money deposited in one bank to the account of another, with directions to the latter to pay the amount thereof by telegram to a third bank, is a specific deposit, which may be recovered in full, as against general creditors, where the bank to whose credit the money is deposited receives the same, but suspends before making payment as directed.

E. S. Pillsbury, for complainants.
Sawyer & Burnett, for defendants.

MORROW, Circuit Judge. This is a bill in equity against an insolvent banking corporation to declare a trust, and recover the sum of $5,000 as a special deposit. The facts are these:

Samuel Montagu & Co., London bankers, cabled the Pacific Bank, in San Francisco, June 20, 1893, as follows:

"Pay by telegram to Puget Sound National Bank, Seattle, Washington, five thousand dollars, a/c of William Cochrane. We remit by cable to National Bank of Commerce, N. York, for your a/c, $5,000."

The money was deposited in the National Bank of Commerce, in New York, on the same day, but was never transmitted by the Pacific Bank to the Puget Sound National Bank, at Seattle, state of Washington. On the 22d day of June, 1893, the Pacific Bank suspended payment and closed its doors, and thereafter refused to pay its depositors or other creditors except in the pro rata distribution of the property and assets of the corporation in the process of liquidation, under the management of the board of directors, in accordance with the laws of the state. It is admitted that there was more than $5,000 in the vaults of the Pacific Bank, belonging to the bank, from June 19, 1893, until the doors were closed, on the 22d of June, 1893. It is contended, on the part of the complainants, that the money involved in this transaction was received by the Pacific Bank for a specific purpose, and not to be checked out or loaned or otherwise used by the bank; that the money constituted a trust fund, and did not become a part of the general assets of the bank, and, not having been applied to the purpose for which it was received, it should be returned to the depositor. The defendants contend that the money remitted by complainants was placed to the account of the Pacific Bank in the National Bank of Commerce, at New York; that it was not sent directly to the Pacific Bank, but became a part of the account between the two banks, and the identity of the deposit was lost; and that, therefore, the complainants should be admitted to share only with the other creditors in the pro rata distribution of the assets of the bank. The National Bank of Commerce was the correspondent, in New York, of the Pacific Bank. It appears from the evidence that Wells, Fargo & Co., in San Francisco, received a cablegram from the complainants on July 10, 1893, as follows:

"London, July 10th, '93.

"On June 20th we telegraphed Pacific Bank to pay by telegram to Puget Sound National Bank, Seattle, Washington, five thousand dollars. William Cochrane. We deposited five thousand dollars with National Bank Commerce in payment. Pacific did not pay. We claim that it was specific payment against deposit, and money therefore ours. Please claim return from Pacific, who had not then suspended, and who now offer no explanation. Write."

Henry Wadsworth, the cashier of Wells, Fargo & Co. at San Francisco, took this cablegram, immediately after its receipt, to the Pacific Bank, and exhibited it to McDonald, the acting president, who acknowledged the receipt of complainant's cablegram of June 20th, and gave as a reason for the failure of the bank to make the payment as directed that they had not received the confirmation from the agent

of the bank in New York; but he admitted that it was customary, on receipt of such a telegraphic transfer draft, to make the disbursement in accordance with the directions of the order, without waiting for the agent's confirmation of the deposit. Subsequently Wells, Fargo & Co. received a letter from complainants, dated London, July 13, 1893, containing, among other things, the following:

"As explained to you in our cable, we asked this bank, on June 20, to pay by telegram to the Puget Sound Nat. Bank, Seattle, Washington, $5,000, for a/c William Cochrane, depositing to meet it the same amount with the Nat. Bk. of Commerce, New York, same as on previous occasions. Upon investigation, we find that this money was not paid to the Puget Sound Nat. Bank, altho' the amount was withdrawn from New York. Our object is now to point out to the Pacific Bank that this amount of $5,000 cannot be looked upon as part of our balance with them in account, but that it was to be used for the specific purpose indicated by us, and consequently repayable in full, especially since the transaction took place some days before the bank failed."

This letter was also shown to McDonald by Wadsworth, who testified that McDonald made no denial as to anything therein set forth. Wadsworth testified further that he had several conversations with the officers of the bank respecting complainant's claim, and it was not denied by them that the Pacific Bank had received the $5,000 from the complainants, to be remitted to the Puget Sound National Bank, at Seattle, Wash. It appears that the complainants had a deposit account with the Pacific Bank at this time, and that there was a balance to their credit in this account amounting to $3,902.15. In a statement received by Wadsworth from the officers of the bank, showing the state of complainants' account with the bank, this balance was shown as of the date of June 22, 1893, when the bank suspended. Then followed an entry, under date of July 14th, showing the deposit in New York on June 21st of $5,000.

It is clear from this evidence that the bank had received, through its agent in New York, prior to its suspension, the deposit in question for transmittal to the Puget Sound National Bank, and that it was a special deposit, made for a specific purpose, and in the nature of a bailment. All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and the other kind of deposit, of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker. Marine Bank v. Fulton Bank, 2 Wall. 252, 256. In Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499, a bank received money from the maker of a note originally given to the bank, before it was due, to pay it to the holder and return the note, but appropriated the money and failed to pay the note. It was held that, upon the subsequent failure of the bank, the maker could reclaim the money from the bank's assignee in trust for creditors. Horton, C. J., thus stated the facts and the law:

"The question in this case is whether a trust in favor of the plaintiff is impressed upon the $782.50 delivered to the cashier of the Riley County Bank on November 22, 1881, for the purpose of paying the note of plaintiff executed to the bank, but at that time owned and, held by the Harrison National Bank of Cadiz, in Ohio. When the bank, through its cashier, accepted the $782.50, it was not paid by the plaintiff as a deposit, nor accepted by the latter as a deposit,

nor was the relation of debtor and creditor between the bank and the plaintiff created by the transaction. On the other hand, as respects this specific sum, the relation between the plaintiff and the bank must be regarded as that of principal and agent. After the bank received this sum to satisfy the note of the plaintiff, the bank held the money in a fiduciary capacity. If the money was not applied, according to the understanding of the parties, to the satisfaction of the note, it should have been returned to the plaintiff. It was not deposited to be checked out or to be loaned or otherwise used by the bank. In law, the bank held it as a trust fund, and not as the assets of the bank. The defendant, as assignee of the bank, succeeds to all the rights of the bank; but as such assignee he has no lawful authority to retain a trust fund in his hands belonging to the plaintiff, and which the bank, at the time of receiving the same, promised and agreed to apply in payment of plaintiff's note. As the money was a trust fund, and never belonged to the bank, its creditors will not be injured if it is turned over by the assignee to its owner. Even if the trust fund has been mixed with other funds of the bank, this cannot prevent the plaintiff from following and reclaiming the fund, because, if a trust fund is mixed with other funds, the person equitably entitled thereto may follow it, and has a charge on the whole fund for the amount due. Frith v. Cartland, 2 Hem. & M. 417, 420."

In People v. City Bank of Rochester, 96 N. Y. 32, the principal facts were these: The City Bank of Rochester had discounted certain notes for the firm of Sartwell, Hough & Ford, a depositor with it, and that firm, wishing to anticipate the payment of these notes, gave to the bank its checks for the amount of the notes, less rebate of interest, which checks the bank received, and charged in the firm account, and entries were made in the bank books to the effect that the notes were paid. The firm at the time supposed that the bank held the notes, but they had in fact been previously sold by it. Before the notes became due, the bank failed; and in an action brought by the attorney general in the name of the people a receiver was appointed of its property and effects. The firm made an application to the court, requiring the receiver to pay the notes out of the funds in his hands. This was finally granted, and an appeal was thereupon taken. Danforth, J., after stating the facts as above, said:

"The transaction in question was not between the bank and Sartwell, Hough & Ford in their relation of debtor and creditor, nor in their relation of bank and depositor. The object of the latter was to provide a fund for the payment of specific notes, and the engagement of the former was to apply that fund to such payment. Thus, a trust was created, the violation of which constituted a fraud by which the bank could not profit, and to the benefit of which the receiver is not entitled. [Citing Libby v. Hopkins, 104 U. S. 303; In re Le Blanc, 14 Hun, 8, affirmed 75 N. Y. 598.] * * * The checks of the petitioner were money assets in the hands of the bank, and were so treated by all parties. They were delivered to it with explicit directions to apply the proceeds on payment of the notes. Those directions were assented to by the bank officer, and the checks collected from the general fund. From that moment the bank was bound to hold the money for, and apply it to, that purpose, and no other, or, failing to do so, return it to the petitioner. As to it, the bank was bailee or trustee, but never owner. It is estopped from saying that all this is a matter of bookkeeping. It assumed a duty, and the receiver, as its representative, is bound by it. Nor does this obligation at all depend, as the appellant seems to suppose, upon the question when, where, and to whom the notes were to be paid. Whether presently or in the future is immaterial. The specific object for which the fund was created was the payment of the notes, and its character does not depend upon those incidental circumstances. The checks were impressed with a trust, and no change of them into any other shape could de-

vest it so as to give the bank or its receiver any different or more valid claim in respect to them than the bank had before the conversion. [Citing Van Alen v. Bank, 52 N. Y. 1; Dows v. Kidder, 84 N. Y. 121.]"

It will be observed that in the case just cited the court held that the fund had been created for a specific purpose, although the firm was a regular depositor with the bank. The case of Massey v. Fisher, 62 Fed. 958, involved facts substantially similar to those in the cases of Peak v. Ellicott and People v. City Bank of Rochester, supra. In that case it was held that where an indorser pays a note to a bank, and takes a receipt containing an order for a surrender of the note on return of the receipt, the relation between the bank and the indorser is not that of debtor and creditor, but is a fiduciary relation, entitling the indorser, on the bank becoming insolvent without applying the money on the note, or procuring its surrender, to have the assets in the hands of its receiver applied in payment thereof. With respect to the contention made in this case, that the money, by mingling it with other funds of the bank, had lost its identity, and therefore could not be recovered, the court said:

"The bank having failed to apply the money to the note, can it be recovered from the receiver? His counsel thinks not, because the bank placed the money in its vaults with other money of its own, whereby its identity was lost. Why should this wrongful act defeat the plaintiffs' right? Nobody is injured by allowing the plaintiffs to take the amount from the deposit. The receiver and creditors stand on no higher plane than the bank, and can no more assert that it was the bank's money than the bank could. It is true, they are entitled to all the bank's property, but this is not its property. It is not important that the plaintiffs' money bore no mark, and cannot be identified. It is sufficient to trace it into the bank's vaults, and find a sum equal to it, and presumably representing it, continuously remained there until the receiver took it. The modern rules of equity require no more. Knatchbull v. Hallett, 13 Ch. Div. 696; National Bank v. Insurance Co., 104 U. S. 54; Bank v. King, 57 Pa. St. 202; Stoller v. Coates, 88 Mo. 514; McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214; People v. City Bank of Rochester, 96 N. Y. 32; Bank v. Weems (Tex. Sup.) 6 S. W. 802; Harrison v. Smith, 83 Mo. 210; Beach, Eq. Jur. § 285; Fisher v. Knight, 9 C. C. A. 582, 61 Fed. 491."

In the case of Anderson v. Pacific Bank, 112 Cal. 598, 44 Pac. 1063, which was a suit against the same defendant as in the case at bar, a special deposit of money was made with the bank as a pledge, to secure it from loss for the furnishing of bail; and it was held, in an action by Anderson to recover from the Pacific Bank the amount of the money so deposited, that the deposit remained in the pledgor, and, after cessation of the liability to secure which the pledge was given, the pledgor could recover the sum deposited, and that in the case of the insolvency of the bank the pledgor was not remitted to the rights of a general creditor, but might recover the entire sum deposited out of the assets of the bank. It was further held that the bank could not plead its wrongdoing to its own advantage, and the fact that moneys specially deposited in the bank by way of pledge were afterwards wrongfully commingled and used as funds of the bank, without the knowledge or consent of the pledgor, could not be urged by the bank, in defense, as effecting any change in the contractual relations and rights of the parties. In the course of the opinion, Mr. Justice Henshaw said:

"It is unquestionably true that one making a general deposit with a bank in the usual course of business parts with title to the moneys deposited. In the case of a special deposit, however, which is a mere bailment, the rule is the same with banking institutions as with individuals. Whether the special deposit be under a contract of bailment for the better protection of the bailor's property, or under a contract of pledge as security for some specific obligation of the pledgor, title does not pass to the bailee or pledgee, but remains in the pledgor."

The case of Farley v. Turner, 26 Law J. Ch. 710, is, so far as the facts are concerned, more directly in point than any other case that I have been able to find. The principal facts were these: The customer of a country bank, having a sum of £924 standing on his account, paid in a further sum of £707, with a written direction that £500 of that sum should be forwarded to another bank to meet a bill to become due. A sum of £500 was sent as directed, but before the bill became due the country bank ceased to carry on business. It was held that the £500 was specifically appropriated, and belonged to the customer of the bank, and not to the general creditors, the bank having been closed. Kindersley, V. C., delivered the opinion, which is as follows:

"I think that the claimant is entitled to the £500 specifically. I am fearful lest I should be influenced in my decision by this being a hard case, since hard cases often make bad law, but still I feel a strong conviction that it will be in accordance with the law to allow the claim. The matter stands in this way: Goodwin, having to pay a bill which he had accepted, payable at Robarts & Co., thought fit to pay into the hands of his bankers, Messrs. Farley, Turner & Jones, a sum of £707 in addition to the balance then standing to his credit. According to the statement in the case, it appears that, at the time of paying in the £707, Goodwin told the clerk that £500 of this money was to be applied for the specific purpose of meeting an acceptance, payable at Robarts & Co.'s, to become due on the 14th. Goodwin at the same time signed the notice before stated. Now, what was the effect of this direction to the bankers? Goodwin, in effect, said: 'There is a bill which I want paid at Robarts & Co. Therefore send them £500 of this money, and advise them to apply it in payment of this bill.' The direction is accepted by the bankers, or by their clerk, which amounts to the same thing, and the clerk did what appears to be usual. There was no negligence on his part. At the same time he placed the whole amount of £707 to Mr. Goodwin's general banking account. He might certainly have sent up a check for £500 to Messrs. Robarts & Co., and placed the remaining sum to Mr. Goodwin's account; but he took the ordinary course, and sent up the £500, debiting Mr. Goodwin's banking account with that sum, and they informed Robarts & Co. that such a bill would be presented. Now, it so happened that the Kidderminster Bank had other bills, more or less under similar circumstances, which they wanted paid at Robarts' bank, and they sent up a batch of bills to Messrs. Overend & Gurney for them to discount, and directed them to pay the amount into Robarts & Co.'s bank for the purpose of meeting other bills, as well as that for £500. It appears to me that the course pursued was the same as if, having no occasion to pay more than the £500 bill, they had simply sent up the specific amount, with a direction to pay that particular bill. It is true that the money was not earmarked as if it had been locked up in a box, but it is a portion of the £707 which had been paid in expressly for the purpose of meeting the bill for £500. The facts of this case differ, I think, from the cases cited. I admit that the money is not a particular deposit with the bankers, but it is money placed in their hands to be applied in a particular way. What I now decide will not trench upon the authorities which decide that money paid into a banker's is not a deposit which you may receive back in the identical notes and sovereigns, but that it is a debt. That is quite a different case. Under the circumstances, I am of opinion that the £500 belongs specifically to Goodwin, and not to the general creditors of Mr. Turner."

From these authorities, it is plain that the deposit in this case should be treated as a special deposit made for a particular purpose, and not as a general deposit. It was therefore in the nature of a bailment, the complainants never having parted with their title to the money. Consequently a trust was impressed upon this $5,000 in favor of complainants, and it does not belong to the general creditors of the bank. A decree will therefore be entered declaring that the defendants hold $5,000 in trust for complainants, and that they recover the same, with costs, and it is so ordered.