### In re DAVIS et al.

(District Court, W. D. Texas, Waco Division. January 26, 1903.)

#### No. 320.

1. BANKRUPTCY—JURISDICTION TO ORDER SURRENDER OF PROPERTY.

A court of bankruptcy has jurisdiction by a summary proceeding to require a third party having in his possession money or property claimed to belong to the bankrupt's estate to show cause why he should not pay over or surrender the same to the trustee, and to inquire into the nature of such party's possession. If he held it prior to the bankruptcy proceedings, under an adverse claim asserted in good faith, the court is without jurisdiction to adjudicate such claim on the merits without his consent; but, if no adverse claim was made at the time the petition in bankruptcy was filed, the title to the money or property passed to the trustee on his appointment, and the court has jurisdiction to require its surrender to him by a summary order, notwithstanding any adverse right subsequently asserted by the party in possession.

2. SAME—ADVERSE CLAIMANT—FUND HELD IN FIDUCIARY CAPACITY.

An insolvent partnership sold its stock of goods, and by its direction the purchaser deposited the price in a bank, taking a receipt therefor, showing that the money was to be prorated among the several creditors of the firm as their interests might appear. Subsequently, on petition of creditors, the partnership was adjudicated an involuntary bankrupt. After such adjudication the bank undertook to apply the money so deposited on certain notes of the firm held by it and another creditor, without the consent of the depositor or the bankrupts, and it refused the demand of the trustee therefor. Held, that the bank held the deposit in a fiduciary capacity, as a trust fund, which precluded it from asserting an adverse claim thereto after the bankruptcy as against the trustee.

8. SAME—ORDER REQUIRING FUND TO BE PAID TO TRUSTEE—INTEREST.

A summary order made by a court of bankruptcy requiring a third party to pay over to a trustee money of an estate in his possession should not include interest on the amount withheld.

In Bankruptcy. On review of order of referee.

The questions submitted for decision arise upon a petition for review filed by the First National Bank of Morgan, Tex., and W. H. Abernathy, challenging an order made by the referee in bankruptcy which required the bank to pay to the trustee in bankruptcy the sum of $3,572.03, with legal interest.

The proceedings are of an involuntary nature, and during their progress a rule was entered by the referee, upon the application of the trustee, commanding the bank and Abernathy to show cause why the money should not be paid over to the trustee. The bank and Abernathy interposed a plea in which they protested against the jurisdiction of the court, mainly on the ground that the referee was without power to compel by summary process the payment of the money. A final hearing was had over the protest of the respondents, all parties being duly represented, and upon consideration the referee entered the order hereinafter set out, requiring the money to be paid. Exceptions were seasonably taken to the order, and the referee has certified the proceedings, as required by the rules, for the consideration of the court. For a more thorough understanding of the points involved, it is deemed proper to insert the following conclusions of fact found by the referee:

"First. That in the matter in controversy W. H. Abernathy was acting as agent for the First National Bank of Morgan, Texas, and that his acts were the acts of the First National Bank of Morgan.

"Second. That the $3,572.03 arising from the sale of J. R. Davis & Co.'s stock of goods was deposited by Sam F. Drake, the purchaser of J. R. Davis & Co., on the 28th day of May, A. D. 1902, in the First National Bank of Morgan, Texas, to be prorated among the creditors of J. R. Davis & Co.

"Third. That on said 28th day of May, A. D. 1902, the First National Bank of Morgan had to the credit of J. R. Davis & Co. the additional sum of $26.25, deposited by J. R. Davis & Co. on May 9, 1902.

"Fourth. That the involuntary petition in bankruptcy was filed herein against J. R. Davis & Co. on the 9th day of June, A. D. 1902, and that they were adjudged bankrupts on the 7th day of July, A. D. 1902, and that Edgar M. Mann qualified as trustee of said bankrupts' estate on the 1st day of August, A. D. 1902.

"Fifth. That the First National Bank of Morgan, Texas, did not make any claim to the deposit of money from the sale of stock of J. R. Davis & Co., made on the 28th day of May, A. D. 1902, at the time said deposit was made, nor at any time before the filing of the petition in bankruptcy, nor until the 9th day of July, A. D. 1902.

"Sixth. That J. R. Davis & Co. at the time of the filing of the petition in bankruptcy herein, and at the date of adjudication, owed the First National Bank of Morgan about $2,486.75, evidenced by four notes, as follows: (1) Note for $1,000, dated January 21, A. D. 1902, due September 15th, A. D. 1902, payable to the Bank of Morgan; (2) note for $1,034, dated May 1. A. D. 1902, due 4 months after date, payable to the Bank of Morgan; (3) note for $224, dated April 10, 1902, due 5 months after date, payable to Morgan Mill & Elevator Company; (4) note for $228.75, dated May 10, 1902, due 5 months after date, payable to Morgan Mill & Elevator Company,—all of which had been transferred by the payees to the First National Bank of Morgan, Texas.

"Seventh. That J. R. Davis & Co. at the time of the filing of the petition in bankruptcy herein, and the date of adjudication, owed the Bank of Morgan the sum of $3,017.10 and interest, evidenced by three notes, as follows: (1) Note for $1,000, dated January 21, 1902, due October 10, 1902, payable to the Bank of Morgan; (2) note for $1,000, dated January 21, 1902, due July 15, 1902, payable to the Bank of Morgan; (3) note for $1,017.10, dated April 18, 1902, due on demand, payable to the Bank of Morgan

"Eighth. That on July 9, 1902, the First National Bank of Morgan indorsed a credit of $808.55 on note for $1,000, dated January 21, 1902, due September 15, 1902, held by said bank, and a credit of $750 on note for $1,034, dated May 1, 1902, due 4 months after date, held by said bank; attempting thereby to appropriate those amounts of the deposit made on the 28th day of May, A. D. 1902, for the benefit of J. R. Davis &. Co.'s creditors, to the payment of the debts due it.

"Ninth. That on July 9, A. D. 1902, the First National Bank of Morgan placed a credit of $1,039.70 on note for $1,017.10, dated April 18, 1902, payable on demand, held by the Bank of Morgan, and a credit of $1,000 on note for $1,000, dated January 21, 1902, due July 15, 1902, held by the Bank of Morgan; attempting thereby to appropriate the deposit made on the 28th day of

May, A. D. 1902, for the benefit of the creditors of J. R. Davis & Co., to the payment of a debt owed the Bank of Morgan by J. R. Davis & Co.

"Tenth. That the First National Bank of Morgan, Texas, had no interest in the two notes above held by the Bank of Morgan.

"Eleventh. That the First National Bank of Morgan, Texas, at the time of placing the credits on the notes above mentioned, did not notify either J. R. Davis & Co., Sam F. Drake, the trustee in bankruptcy, or any other creditor of J. R. Davis & Co., except the Bank of Morgan, that it intended to appropriate the deposit made on the 28th day of May, A. D. 1902, to the payment of the debt above set forth, and did not at any time before the 9th day of August, A. D. 1902, notify any of said parties that it had done so.

"Twelfth. That on August 1, A. D. 1902, Edgar M. Mann, the trustee in bankruptcy, made a demand on the First National Bank of Morgan, Texas, for the $3,572.03 deposited on May 28, A. D. 1902, and that on August 5, A. D. 1902, the First National Bank of Morgan replied evasively to said demand, and that on August 9, A. D. 1902, Edgar M. Mann, trustee, made another demand upon said First National Bank of Morgan for the said money, and on said date the First National Bank of Morgan declined to pay over said money, claiming to have appropriated it to the payment of debts due the First National Bank of Morgan and the Bank of Morgan."

The conclusions of the referee are clearly supported by the evidence appearing of record, which further discloses the following facts: The First National Bank of Morgan was organized May 8, 1902. The Bank of Morgan was a partnership concern, composed of G. H., W. H., and Walter Abernathy. W. H. Abernathy was the cashier of the First National Bank of Morgan, and cashier and general manager of the Bank of Morgan. The Bank of Morgan ceased to do a banking business upon the organization of the First National Bank, and transferred its business to that bank, which assumed to pay the depositors of the Bank of Morgan out of assets transferred to it by the Bank of Morgan for that purpose. On May 8, 1902, the date of the organization of the First National Bank, J. R. Davis & Co., the bankrupts, owed the Bank of Morgan about $5,500, evidenced by seven promissory notes, and at the same time the Bank of Morgan transferred to the First National Bank of Morgan four of these notes, aggregating, approximately, $2,486.75. The bankrupts sold their stock of goods to Samuel F. Drake on or about May 21, 1902, and the bill of sale executed by them, among other things, expressly provided that the proceeds of the sale should be prorated among their several creditors. Drake, the purchaser, accompanied by Mr. Hardin, who acted in the matter as representative of J. R. Davis & Co., called at the First National Bank on May 28, 1902, and delivered the proceeds of the sale, to wit, $3,572.03, to the cashier, W. H. Abernathy, who duly executed a receipt therefor in the following form: "Received of Sam'l F. Drake, for acct. of J. R. Davis & Co., the sum of thirty-five hundred and seventy-two 03/100 ($3,572.03), to be prorated among the several creditors of J. R. Davis & Co. as their interests may appear."

The order passed by the referee, requiring the First National Bank of Morgan to pay over the money deposited with it by Drake and Hardin, is as follows:

"Having fully considered the application of Edgar M. Mann, trustee, for rule against W. H. Abernathy and the First National Bank of Morgan, Texas, requiring them to show cause why they should not turn over to the trustee $3,572.03, together with the plea of W. H. Abernathy and the First National Bank of Morgan, Texas, to the jurisdiction of the court to entertain such motion and make such order asked for, and having fully heard and considered testimony taken upon said motion and plea, on the 13th day of November, A. D. 1902, it is ordered that the plea to the jurisdiction be, and is hereby, overruled. It appearing from the testimony that W. H. Abernathy has no money in his possession belonging to the estate of J. R. Davis & Co., it is ordered that the said motion, as against said W. H. Abernathy, as an individual, be, and is hereby, refused, and that all costs attending upon this motion against W. H. Abernathy be taxed against the trustee. It appearing from the testimony that on the 28th day of May, A. D. 1902, Sam F. Drake

deposited with the First National Bank of Morgan, through W. H. Abernathy, its cashier, the sum of $3,572.03, to be prorated among the several creditors of J. R. Davis & Co. as their interests may appear; it further appearing to the court that this deposit was made to the said First National Bank of Morgan in trust for the creditors of J. R. Davis & Co., and that thereby the First National Bank of Morgan was constituted an agent or trustee for the creditors of J. R. Davis & Co.: It is therefore ordered that the application of the trustee herein be granted; and it is further ordered that the First National Bank of Morgan, Texas, be, and is hereby, required to pay over to Edgar M. Mann, trustee in this cause, within ten days from this date, the sum of $3,572.03, with interest thereon from the 5th day of August, A. D. 1902, at the rate of six per cent. per annum. It is further ordered that the First National Bank of Morgan, Texas, be, and is hereby, ordered to pay all costs of this proceeding, except such costs as attached to motion against W. H. Abernathy.

M. C. H. Park,
"Referee in Bankruptcy."

Throughout the entire proceeding the respondents, claiming to hold the fund adversely to the trustee, objected to the jurisdiction of the court, and insisted that the court was powerless, without their consent, to make an order requiring them to pay over moneys so adversely held.

Claude V. Birkhead and Davis & Cocke, for trustee.

J. D. Williamson, for respondents.

MAXEY, District Judge. The only question necessary to be considered is whether this court, as a court of bankruptcy, has jurisdiction to compel, by summary process, and over the protest of the First National Bank of Morgan, the payment of the money, deposited with the bank by Drake and the bankrupts, to the trustee in bankruptcy. That jurisdiction exists generally to require, in a summary manner, the bankrupt or a third person to pay over money or to surrender other property in his possession belonging to the bankrupt's estate, to which no adverse title is asserted, seems to be well settled by recent adjudications; and the payment or surrender, in the one case or the other, may be required notwithstanding the person against whom the order is directed may not consent to the jurisdiction of the court. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413; In re Rosser, 41 C. C. A. 497, 101 Fed. 562. See, also, Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; In re Purvine, 37 C. C. A. 446, 96 Fed. 192. But what are the limits of this summary jurisdiction? Must the court stay its hand upon the mere ascertainment that money belonging to the bankrupt's estate is in the possession of a third party? Or should it inquire into the nature of the possession, and govern its action accordingly? Upon these questions the cases of Mueller v. Nugent and Trust Co. v. Comingor are instructive. In the former it was said by the court:

"The bankruptcy court would be helpless, indeed, if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law. It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866); and, on adjudication, title to the bank-

rupt's property became vested in the trustee (sections 70, 21e [U. S. Comp. St. 1901, pp. 3451, 3430] ), with actual or constructive possession, and placed in the custody of the bankruptcy court. There was no pretense that at the date of the filing of this petition in bankruptcy this money of the bankrupt, $4,133.45 of which had been collected a few days, and $10,100 a few hours, before, was held subject to any adverse claim, or that the right or title thereto had been passed over to another. The position now taken amounts to no more than to assert that a mere refusal to surrender constitutes an adverse holding in fact, and therefore an adverse claim when the petition was filed, and to that we cannot give our assent. But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt. The bankruptcy court had the power to ascertain whether any basis for such claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review."

And in the latter:

"The question is whether the district court had jurisdiction to finally adjudicate the merits in this proceeding. We have just held, in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, that the district court has power to ascertain whether in the particular instance the claim asserted is an adverse claim existing at the time the petition was filed. And according to the conclusion reached, the court will retain jurisdiction or decline to adjudicate the merits."

From a careful examination of the two cases last referred to, the court is of the opinion that the district court, as a court of bankruptcy, has power in a summary way to ascertain whether in the present case the claim of the bank was a real adverse claim existing against the bankrupts at the time the involuntary petition was filed against them. And if the bank did not at that time claim adversely the money held by it pursuant to the receipt executed by its cashier, the referee had the power to summarily order the bank to pay it over to the trustee for distribution among the bankrupts' creditors. The question then seems to be reduced to one of fact, which should be answered by the record. Briefly stated, the facts upon this point are as follows: Certain creditors filed their petition in bankruptcy against the firm of J. R. Davis & Co. on June 9, 1902. They were adjudged bankrupts July 7, 1902, and the trustee of the estate qualified on the 1st day of August following. On or about May 21, 1902, J. R. Davis & Co. sold their stock of merchandise to Drake for $3,572.03, and on May 28th Drake and Hardin (the latter representing J. R. Davis & Co.) deposited the full amount with the First National Bank of Morgan, taking therefor a receipt from the bank which expressed upon its face that the money was to be prorated among the creditors of J. R. Davis & Co. as their interests might appear. At the date of the deposit, J. R. Davis & Co. owed the First National Bank of Morgan about the sum of $2,486.75, evidenced by several promissory notes, none of which became due until on or about August 1, 1902, the date of the qualification of the trustee. On May 28, 1902, J. R. Davis & Co. were indebted to the Bank of Morgan in a sum somewhat exceeding $3,000, as evidenced by certain promissory notes, in which the First National Bank of Morgan had no interest. On July 9, 1902, the First National Bank,

without the consent of Drake or of the bankrupts, and without notice to either, appropriated the $3,572.03 deposited with it by applying about $1,550 of the amount as a credit on the indebtedness of the bankrupts to it, and the remainder as a credit on the notes held by the Bank of Morgan. And the referee finds as a fact (a conclusion, it may be said, having ample justification in the record) that the First National Bank of Morgan asserted no adverse claim to the money deposited with it until the date of its appropriation as above stated, which was one month subsequent to the filing of the petition in bankruptcy, and two days after the order of adjudication. Applying, then, the principle of law announced by the court in Mueller v. Nugent, and Trust Co. v. Comingor, supra, to the facts of the case before the court, the action of the referee in summarily requiring the payment of the money by the bank would appear to be proper, since at the date of the filing of the bankruptcy petition no adverse claim to the fund was asserted by the bank,

But upon the merits of the controversy, would the bank be in a position to successfully contest the right of the trustee to the money? Its ability to do so would depend upon its right to apply the fund to its own use. While a general deposit by a merchant of money in a bank creates the relation of debtor and creditor, and authorizes the bank to use the money as its own, such result does not obtain when the deposit is made for a special purpose,—as, for example, to be paid to creditors, as was the case here. In the latter case a fiduciary relationship is created, and the money is held as a trust fund, not as bank assets, and hence the bank is without lawful right to appropriate it to its own use. In Peak v. Ellicott, 30 Kan. 161, 162, 1 Pac. 501, 46 Am. Rep. 90, the principle is so clearly stated that nothing need be said by way of elaboration. Speaking for the court in that case, Mr. Chief Justice Horton said:

"The question in this case is whether a trust in favor of the plaintiff is impressed upon the $782.50 delivered to the cashier of the Riley County Bank on November 22, 1881, for the purpose of paying the note of the plaintiff executed to the bank, but at that time owned and held by the Harrison National Bank of Cadiz, in Ohio. When the bank, through its cashier, accepted the $782.50, it was not paid by the plaintiff as a deposit, nor accepted by the latter as a deposit; nor was the relation of debtor and creditor between the bank and the plaintiff created by the transaction. On the other hand, as respects this specific sum, the relation between the plaintiff and the bank must be regarded as that of principal and agent. After the bank received this sum to satisfy the note of the plaintiff, the bank held the money in a fiduciary capacity. If the money was not applied, according to the understanding of the parties, to the satisfaction of the note, it should have been returned to the plaintiff. It was not deposited to be checked out, or to be loaned or otherwise used by the bank: in law the bank held it as a trust fund, and not as the assets of the bank. The defendant, as assignee of the bank, succeeds to all the rights of the bank, but as such assignee he has no lawful authority to retain a trust fund in his hands belonging to the plaintiff, and which the bank at the time of receiving the same promised and agreed to apply in payment of plaintiff's note. As the money was a trust fund, and never belonged to the bank, its creditors will not be injured if it is turned over by the assignee to its owner. Even if the trust fund has been mixed with other funds of the bank, this cannot prevent the plaintiff from following and reclaiming the fund, because, if a trust fund is mixed with other funds, the person equitably enti-

tled thereto may follow it, and has a charge on the whole fund for the amount due. Frith v. Cartland, 2 Hen. & M. 417, 420."

See, also, Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769; Central Nat. Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Montagu v. Bank (C. C.) 81 Fed. 602; Bank v. Weems, 69 Tex. 489, 6 S. W. 802, 5 Am. St. Rep. 85; Wilson v. Dawson, 52 Ind. 513; Zane, Banks & Banking, §§ 136, 341; 3 Am. & Eng. Enc. Law (2d Ed.) p. 822, and authorities cited.

In Wilson v. Dawson, 52 Ind. 515, the court stated the principle in the following language:

"It is a general rule that funds deposited in a bank for a special purpose, known to the bank, cannot be withheld from that purpose, to the end that they may be set off by the bank against a debt due to it from the depositor. The claim of a general lien by the bank would be inconsistent with its special undertaking. Morse, Banks & Banking, 34, et seq., and authorities cited; Bank v. Macalester, 9 Pa. 475."

From the authorities cited, the conclusion is plain that the deposit made by the bankrupts with the First National Bank of Morgan should be treated as a special deposit for the benefit of the bankrupts' creditors, and not as a general deposit. The bankrupts retained their title to the fund for the particular purpose specified in the receipt executed by the bank, until the order of adjudication was passed, from which date the title became vested in the trustee thereafter appointed. Hence the fund was not adversely held by the bank, its possession being in the nature of an agency, the status attributed by the supreme court to an assignee under a deed of assignment (Bryan v. Bernheimer, supra), and the referee acted within his jurisdiction in issuing the order requiring the agent to pay the fund over to the trustee for the benefit of the estate which he represented.

It is further objected that interest is not recoverable in a proceeding of this nature. In Central Nat. Bank v. Connecticut Mut. Life Ins. Co., and Peak v. Ellicott, supra, interest was allowed; but those were plenary suits, in which judgments rendered for money are usually enforced by the levy of executions, and not summary proceedings in bankruptcy, where the penalty of disobedience is punishment for contempt. The bankruptcy act is silent upon the subject, and counsel have submitted no authorities pertinent to the inquiry; nor has the investigation made by the court disclosed a case where the payment of interest has been enforced in a proceeding of this nature. While, therefore, not altogether satisfied with the conclusion reached, the court is of the opinion that an order of the referee in a case like the present should not include interest on the amount withheld. The order of the referee will consequently be amended by eliminating the item of interest. And an order will be entered requiring the First National Bank of Morgan to pay over to the trustee in bankruptcy the sum of $3,572.03 on or before January 26, A. D. 1903.