## SEATTLE CURB EXCHANGE v. KNIGHT.
### No. 6602.

Circuit Court of Appeals, Ninth Circuit.
April 4, 1932.

As Amended on Denial of Rehearing May 23, 1932.

**40**

|                                | |
|--------------------------------|---------:|
| To the Seattle Curb Exchange   | $ 59.00  |
| To Miller, Court & Co.         | 2,451.82 |
| To E. W. Knight, on account    | 438.68   |
|                                | $3,950.00 |

The referee determined that the two latter claims were not properly payable from the fund, under the rules of the Stock Exchange, and ordered the appellant to turn over that amount to the trustee with interest at 6 per cent. from the date of the sale of the seat, September 25, 1929. The appellant challenges the jurisdiction of the referee in bankruptcy and of the trial court to make the turnover order in the light of its contention that the money had been disbursed in accordance with the rules of the Exchange.

It is contended that upon the showing of the appellant that it claimed to have disbursed the money in accordance with the rules of its organization, the validity of its acts and of the claims paid could only be determined in a plenary suit. We held on the former appeal that the bankruptcy court had constructive possession of the membership and jurisdiction thereof and to determine the claims of the Seattle Stock Exchange with reference thereto. Appellant contends that we did not go so far as this on the previous appeal. We think we did. If we did not, we do now.

With reference to the authority of the Seattle Curb Exchange to appropriate $3,451.82 for the payment of Miller, Court & Co., two issues are raised by the parties. Miller, Court & Co. is a corporation. Such a corporation is not and cannot be a member of the Exchange. It is therefore contended that the rules of the Exchange which provide for the reimbursement of members from the proceeds of the sale of the seat of an insolvent member, do not apply to the claim of a corporation which is not a member. It is further contended with reference to this claim, that even if Miller, Court & Co. were a member of the Exchange and as such entitled to the privileges of a member, nevertheless it is not shown that the claim comes within the purview of the rule for the reason that the claim was not made upon contracts subject to the jurisdiction of the Exchange as provided by its rule. As to the claim of E. W. Knight, it is conceded that he was a member of the Stock Exchange, but it is contended that his claim arose from a personal obligation arising from a contract of employment and was not such a contract as is covered by the rules of the Exchange authorizing the payment of an indebtedness from the pro-

Hartman & Hartman, of Seattle, Wash. for appellant.

Leopold M. Stern, of Seattle, Wash. (Edward F. Stern, of Seattle, Wash., of counsel), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

The principal facts in this matter are stated in our opinion in the former appeal, Scattle Curb Exchange v. Knight, 46 F. (2d) 34. Upon the return of the case to the trial court for further proceedings the referee heard evidence with reference to the disposition of the funds derived from the sale of the seat of the bankrupt in the Seattle Curb Exchange. The appellant claims to have disbursed the $3,590 received from the sale of the seat as follows:

ceeds of the sale of the seat of an insolvent member. The referee determined these issues in favor of the trustee in bankruptcy and upon a petition for review the court, after considering the evidence, sustained the decision of the referee and ordered payment to the trustee of $3,890.50 with interest at 6 per cent. from September 25, 1929, as the surplus from the sale of such seat. From this order appellant takes this appeal. The rule of the Exchange with reference to the disposition of the proceeds of the sale of a seat or membership is as follows:

"Section 11. Upon any transfer of membership, whether made by a member voluntarily, or by the Board of Governors or by the Committee on Membership in pursuance of the provisions of the by-laws, the proceeds thereof shall be applied to the following purposes and in the following order of priority, viz.:

"First: The payment of all fines, dues and charges of the Exchange, or any department thereof, against a member whose membership is transferred.

"Second: The payment of creditors *who are members of the Exchange*, or *firms* registered thereon of all filed claims *arising from contracts subject to the rules of the Exchange*, if, and to the extent that, the same shall be allowed by the Committee on Membership. The priority of all other claims may be determined by the Committee on Membership. If said proceeds shall be insufficient to pay said claims as so allowed, in full, the same shall be applied to the payment thereof pro rata.

"Third: The surplus, if any, of said proceeds shall be paid to the person whose membership is transferred, or to his legal representatives, upon the execution by him or them of a release or releases satisfactory to the Committee on Membership."

Article XX, section 7, of the by-laws of the corporation, excludes corporations from membership. That section is as follows: "Section 7. Membership herein shall be personal only. When any member of this Exchange is an officer of a corporation or member of a partnership and conducts the major portion of his brokerage business in connection with such organization, then such corporation or partnership, for advertising and business purposes, may claim to be a member of this Exchange, and upon such privilege being assumed and received by such corporation or partnership, it shall be liable on all transactions in connection with the Exchange, to the same extent and effect as the

member hereof. The privileges herein and hereby granted, to any corporation or partnership, may be withdrawn at any time and without reason or cause assigned thereon, upon a two-thirds vote of the Board of Governors."

A corporation is not a member of the Exchange within the meaning of section 11, subdivision 2, nor is it or can it be a firm registered thereon. Article XX, section 7, differentiates between a corporation and a partnership indicating that the framers of the articles had that distinction in mind. This latter section, section 7, provides that corporations or partnerships holding themselves out as members of the Exchange by reason of the fact that an officer of a corporation or member of a partnership conducts the major portion of his brokerage business in connection with such organization "shall be liable on all transactions in connection with the Exchange, to the same extent and effect as members thereof." It does not provide ex industria that such corporation or partnership shall be entitled to all the privilege of membership, and with reference to the particular privilege of members here involved, namely, that of payment of their claims from the proceeds of the sale of the seat, corporations are not mentioned while firms registered are so privileged. The reason for such a distinction, if there is any, is entirely immaterial, for the rights of the Seattle Curb Exchange to appropriate the proceeds of the bankrupt's property-right in the seat must be determined by the by-laws of the Exchange, or, to put it differently, the right of the bankrupt and his trustee in bankruptcy in the seat, or proceeds therefrom, is determined by the by-laws of the corporation which define rights and privileges incident thereto. The Exchange has no power to impose restrictions upon the seat or to impound the proceeds to answer obligations which are not placed thereon by the by-laws as an incident to the right of membership.

■ We agree with the referee and the trial court that the claim of Miller, Court & Co., a corporation, does not come within the purview of article XX, section 11, and consequently that the payment of such claim from the proceeds of the sale of the seat is unauthorized. We find it unnecessary to consider the other question with relation to this claim.

■ The claim of the appellee is that the money due Earl W. Knight on his contract of employment by the bankrupt is not a claim "arising from contract subject to the rules of the Exchange."

There is no merit in the claim that the contract between the bankrupt as a member of the Seattle Curb Exchange and Earl W. Knight, another member of the Curb Exchange, by which the former employed the latter to represent him upon the floor of the Exchange, or otherwise, is a contract subject to the rules of the Exchange within the meaning of article XX, § 11, subdivision second, above quoted. The rules of the Exchange provide as follows:

"Article III of Trading Rules.
"Contracts Subject to the Rules of the Exchange. ·

"Section 1. All contracts of a member of the Exchange, or of a firm having a member of the Exchange as a general partner with any other member of the Exchange, or with any other firm having a member of the Exchange as a general partner, for the purchase, sale, borrowing, loaning or hypothecation of securities, or for the borrowing, loaning or payment of money, whether occurring upon the floor of the Exchange or elsewhere, are contracts subject to the rules of the Exchange."

It is claimed that the phrase "or payment of money" is sufficiently broad to cover any obligation between members of the Curb Exchange. In its broadest application the contract of employment by one member or another would come within the letter of the by-law, but the content, and the caption, of section 1, art. III, indicates that "borrowing, loaning or payment of money," referred to, is in connection with "the purchase, sale, borrowing, loaning or hypothecation of securities," or in any event in connection with the "brokerage business" referred to in the rules of the Exchange. We do not think that the by-law was intended to cover the contracts of employment by broker, or member, although the employee is also a member. The rights of the Exchange to establish rules of priority of payment for obligations arising in connection with the business it conducts must be limited by the scope and purpose of the organization as well as by the language used in its by-laws. Its power to make rules governing the obligations and rights of its members in contravention of the general law on the subject must be strictly limited to the field legitimately covered by the scope of its business. See Middleton v. Fidelity-Philadelphia Trust Co. (C. C. A.) 35 F.(2d) 851. Appellant contends that the turnover order is also erroneous in so far as it requires the payment of interest by the Exchange upon the money it received for the sale of the bankrupt's seat.

The law of Washington provides for the payment of interest at 6 per cent. upon all deferred obligations for the payment of money. Remington's Comp. Stat. of Washington, § 7299. We see no reason why this statute should not be applied where, as is the case here, the money has been paid out by the Exchange under a claim of right and thus used by it for its own purposes. Whether or not the order should require the payment of interest in case the money is held subject to the order of court, and until the rights of the bankrupt thereto have been determined, is a point not involved. In re Silverman (C. C. A.) 11 F.(2d) 970, it was held that the summary order in bankruptcy requiring a third person to turn over assets of the bankrupt should require the payment of whatever has been earned by the principal sum. This, in the absence of evidence to the contrary, would be deemed to be the statutory rate of interest. In so far as the decision of District Judge Maxey of the District Court of the Western District of Texas, Waco Division, in Re Davis, 119 F. 950, cited by appellant, is in conflict herewith, we are unable to follow the conclusion which the judge announces that he is "not altogether satisfied with." We see no reason for a different rule in a summary proceeding and in a plenary suit. As to the payment of interest certainly there is no reason for a distinction applicable in the case at bar.

Order affirmed.